UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UB FOUNDATION ACTIVITIES, INC.,

        Plaintiff,

 v.

IT HEALTHTRACK, INC.,
DR. PAMELA SMITH,

        Defendant.

**DECISION**
**and**
**ORDER**

**04-CV-443S(F)**

APPEARANCES:  HODGSON RUSS LLP
        Attorneys for the Plaintiff
        PAUL I. PERLMAN, of Counsel
        The Guaranty Building, Suite 100
        140 Pearl Street
        Buffalo, New York 14202-4040

        DAMON & MOREY LLP
        Attorneys for the Defendants
        JAMES W. GORMLEY, of Counsel
        1000 Cathedral Place
        298 Main Street
        Buffalo, New York 14202-4096

   In this action for copyright infringement and Defendants' alleged infringement of Plaintiff's copyright and federal anti-trust counterclaims based on Plaintiff's alleged restraint of trade and monopolization in violation of the Sherman Act Sections 1 & 2 and New York law, Defendants and Counterclaimant Plaintiffs ("the Defendants") move by papers filed August 27, 2009 to compel documents and further depositions of Plaintiff's representatives (Doc. No. 70) ("Defendants' motion"). Defendants contend that in providing Defendants, on November 6, 2008, with copies of Plaintiff's financial records, pursuant to Defendants' earlier discovery requests, purporting to accurately account for revenues Plaintiff received from its subscribers and licensees, medical rehabilitation

providers ("Plaintiff's Subscribers") operating in the U.S. market, of Plaintiff's FIM™ Instrument,[1] Uniform Data System and Data Specification Guide (Doc. No. 46 at 3-4), the copyrighted record keeping system at issue in Plaintiff's action, for the period 2002-2008, Plaintiff's documents fail to explain numerous discrepancies and omissions as identified by Defendants' accounting expert, William J. Friedman, C.P.A. (Doc. No. 73) ("Friedman Declaration"). Declaration of James W. Gormley, Esq. (Doc. No. 71) ¶ 34. As a result, Defendants assert the produced records lack reliability rendering them useless to Defendants' economic consultant as a basis for accurately defining Plaintiff's market share, a necessary element of Defendants' monopolization counterclaim. *Id.*, Friedman Declaration ¶ 12 (UBFA's "journals present a confusing picture."). According to Defendants, the differences in Plaintiff's subscriber revenues attributable to the deficiencies identified by Defendants' expert vary between approximately[2] $1,357,000 and $2,100,000 for Plaintiff's 2003 - 2008 fiscal years. Friedman Declaration ¶ 18. Defendants estimate the potential additional unrecognized revenue for Plaintiff's Uniform Data System for Medical Rehabilitation Division ("UDSMR"), the business unit within Plaintiff's corporate organization that is responsible for the enforcement of Plaintiff's copyright in its licensed medical rehabilitation system to be approximately $10,855,000. Reply Declaration of William J. Friedman (Doc. No. 79) ("Friedman Reply Declaration") ¶ 13. Defendants also assert that, based on his experience, Friedman "identified thousands" of nonsensical "ledger entries" made by UDSMR. Friedman

---

[1] Functional Independence Measure.

[2] The court has rounded the actual figures.

2

Reply Declaration ¶ 5.

Specifically, Defendants seek to compel Plaintiff to provide seven categories of documents to enable Defendants to more accurately determine Plaintiff's subscriber revenues for the period 2002-2008, as described in Defendants' motion (Doc. No. 70) at 1-2. For example, Defendants request Plaintiff produce, *inter alia*, journal and ledger entries, memoranda and notes relating to reclassified revenues for Plaintiff's 2002-2008 fiscal years, and documents describing methods for revenue reclassification and allocations of reclassified revenue. *Id.* Additionally, Defendants seek permission to redepose Mr. Edward Schneider, Plaintiff's chief executive officer, or other persons responsible for management for Plaintiff's UDSMR Division with knowledge of the UDSMR financial record keeping system, following receipt of the requested information, and for amendment of the Amended Scheduling Order (Doc. No. 69) to grant sufficient time for Defendants to obtain and evaluate the requested information Defendants maintain is necessary to provide Defendants' expert disclosures pursuant to Fed.R.Civ.P. 26(a)(2).

In opposition, Plaintiff argues that Defendants' motion is an attempt to delay Defendants' disclosure of its economist's opinions, in accordance with the Amended Scheduling Order, in support of Defendants' antitrust counterclaims, and that Defendants' document requests are beyond the permissible scope of document discovery available pursuant to Fed.R.Civ.P. 34(a) and Plaintiff's general duty to supplement under Fed.R.Civ.P. 26(e)(1). Affidavit of Paul I. Perlman, Esq. (Doc. No. 76) ("Perlman Affidavit") ¶¶ 1-2; ¶ 4. Specifically, Plaintiff contends the duty to supplement does not include the obligation to create new documents of an explanatory

nature that did not exist at the time of a party's document requests. *Id.* Plaintiff also objects that Defendants' requests were first made by Defendants following the close of fact discovery on August 29, 2008, and that Defendants delayed over six months before raising the instant objections to Plaintiff's production. Perlman Affidavit ¶ 4 (referring to the initial Scheduling Order for this case (Doc. No. 19)). Finally, Plaintiff maintains it has previously provided some of the exact documents called for in Defendants' motion, specifically UDSMR customer lists and Plaintiff's IRS Form 990 for Plaintiff's 2008 fiscal year. Perlman Affidavit ¶ ¶ 20-21. Defendants have not responded to this representation.

Plaintiff also submitted, in opposition to Defendants' motion, the affidavit of Ms. Kathleen Dann, Operations Manager of the UDSMR. In her affidavit, ("Dann Affidavit") (Doc. No. 77), Ms. Dann avers that the discrepancies asserted by Mr. Friedman's report are not discrepancies but represent adjustments and other accounting entries required by UDSMR's ordinary course of doing business with its subscribers. Dann Affidavit ¶ 2. Defendants responded by asserting Ms. Dann lacked sufficient accounting expertise to make these averments, and requested the court strike her affidavit. Reply Declaration of James W. Gormley, Esq. ("Gormley Reply Declaration") (Doc. No. 78) ¶ ¶ 4-5, 11-12 (Dann affidavit should be stricken as "inadmissible unqualified expert opinion, or inadmissible lay opinion").

At a hearing on Defendants' motion, conducted October 15, 2009 (Doc. No. 82), the court requested the parties advise the court whether Plaintiff would agree, as a means to resolve Defendants' motion (in lieu of a judicial determination on Defendants' motion), to provide a general ledger journal relating to the disputed entries, a document

Defendants described at the hearing as one which is likely to provide additional information that may enable Defendants to resolve some, if not all, of the perceived discrepancies and deviations from standard accounting principles, attributed by Defendants to the UDSMR's financial records and accounting for Plaintiff's subscriber revenues as provided by Plaintiff to Defendants. According to Plaintiff's letter to the court, dated October 22, 2009 (Doc. No. 85) ("Perlman Letter"), Plaintiff would agree to provide voluntarily the general ledger journal only if Defendant would agree that fact discovery in the case was thereby concluded, except as to any further deposition by Plaintiff's representative which the court may direct. To date, Defendants have not responded to Plaintiff's proposed compromise, and the court accordingly presumes it is not acceptable to Defendants. In compliance with the court's request at the hearing, Defendants also provided a Supplemental Memorandum of Law to explain the legal rationale for Defendants' need for Plaintiff's subscriber revenues in support of Defendants' monopolization counterclaims (Doc. No. 83) ("Defendants' Supplemental Memorandum").

According to Defendants, as an element of Defendants' antitrust counterclaims, the relevant market is the "medical rehabilitation outcomes assessment market." Answer ¶ 69. However, Defendants also allege that Plaintiff conspired with MedTel Outcomes, Inc. ("MedTel"), Defendants' "primary competitor in the 'Relevant Submarket,'" in order to "drive Defendants from the relevant market." Answer ¶¶ 70-72, and to "punish Defendants" for providing their services to customers of Plaintiff's competitor in the relevant market. *Id.* ¶ 71. Defendants do not allege they and MedTel directly compete with Plaintiff in the relevant market; rather, Defendants claim they

5

provide "complementary services," to those provided by Plaintiff to its subscribers, *i.e.*, "outpatient interviews, reporting outpatient information, formatting such post-discharge information, and reporting such information" to Plaintiff's and Defendants' "mutual clients." Answer ¶ ¶ 101, 103. Defendants also assert Plaintiff's primary competitor in the Relevant Market is eRehabData, a service organization owned by the American Medical Rehabilitation Providers Association. Answer ¶ ¶ 124-26. Defendants further allege MedTel is licensed by Plaintiff to use Plaintiff's FIM, Uniform Data System, and Data Specification Guide and that Plaintiff, by threatening to enforce its copyright against unlicensed users, including rehabilitation service facilities which are current or potential customers of Defendants, seeks to "drive ITH [Defendants] out of business for the benefit of" MedTel. Answer ¶ ¶ 133-37 (bracketed material added). Defendants do not allege Plaintiff has refused to grant them a license on similar terms to the license Plaintiff granted to MedTel, Answer ¶ 131, rather; Defendants allege they have refused to accept Plaintiff's license because it misrepresents Plaintiff's ownership of a copyright in the licensed system and related software. Answer ¶ ¶ 120-22, 127-28. Defendants' Sixth Affirmative Defense, ¶ ¶ 63-73, alleging copyright misuse, is predicted on Plaintiff's alleged concession that the programs at issue result from publically funded research and are thus in the public domain. Answer ¶ ¶ 50-51, 69-70. Such misuse also is alleged as a fact supporting Defendants' antitrust counterclaims. Answer ¶ 127.

As to Defendants' monopolization counterclaim, asserted under Section 2 of the Sherman Act, courts recognize the need to establish the parameters of the relevant market and the alleged monopolist's share of that market. *Broadway Delivery Corp. v. United Parcel Service of America, Inc.,* 651 F.2d 122, 126-27 (2d Cir. 1981) (noting that

Section 2 claim requires demonstration that alleged monopolist "has acquired or maintained monopoly power [*sic*] the power to control prices or exclude competition in the relevant market") (citing cases). The Second Circuit recognizes that in considering whether an alleged monopolist exercises monopoly power in a relevant market, in addition to the percentage of total business transactions controlled by an accused monopolist in the relevant market, the trier of fact may also consider the "more traditional measure of the percentage of revenues received" by the alleged monopolist from the relevant market, contrasted with the total revenues received by all competitors providing the relevant service or products, inclusive of substitutes, in the relevant market. *Id.* at 127. *See also* Phillips E. Areeda, Herbert Hovenkamp, John L. Solow, ANTITRUST LAW, Vol. 11B § 535b (3d ed. 2007) ("A firm's significance is usually measured by its sales." * * * Presumptively, therefore [market] shares should be measured by sales rather than output." (bracketed material added)). Other facts relevant to the existence of actual monopoly power include "the strength of competition, the probable development of the industry, and consumer demand . . .." *Hayden Publishing Co., Inc. v. Cox Broadcasting Corp.,* 730 F.2d 64, 69 (2d Cir. 1984). As to services, market share is a function of control over a large percentage of the value of all transactions serviced within the relevant market. *See United States v. Visa U.S.A., Inc.,* 344 F.3d 229, 239-40 (2d Cir. 2003) (market dominance based on defendants' percentages of value of total credit card transactions).

In this case, Defendants contend that while Plaintiff enjoys subscriptions with approximately 61% to 80% of the medical rehabilitation providers, as its subscribers, in any particular geographic area of the United States, Defendants' Supplemental

Memorandum at 8, Plaintiff's actual market share, based on the relevant percentage of Plaintiff's revenues from its subscribers in those areas, if properly calculated based on the additional financial information sought from Plaintiff on Defendants' motion, may indicate Plaintiff enjoys a lesser degree of actual market power in such areas and thus throughout the national economy. *Id.* at 8-9. According to Defendants, such fact would, if established, require reconsideration of Defendants' monopolization claim. *Id.* Although not explicitly asserted by Defendants, the converse, that through the accounting deficiencies identified by Defendants, "plaintiff . . . distort[ed] its pricing . . . [or] "market power," *id.*, at 8, and thus substantially understated Plaintiff's actual market share and power, may also be the case. The court therefore finds that for the purposes of permitting further discovery in support of Defendants' monopolization counterclaims, Defendants' request for additional financial information, more fully describing Plaintiff's subscription revenues and licensing fees received from its subscribers and licensees of its copyrighted rehabilitation reporting systems, is relevant to Defendants' counterclaims, specifically Plaintiff's share of the relevant market in which Defendants allege Plaintiff controls a dominant share, *i.e.*, the "medical rehabilitation outcomes assessments" market serviced by "medical rehabilitation facilities" in the United States.[3]

---

[3] The court's conclusion that the market share information sought by Defendants is relevant to Defendants' antitrust counterclaims does not imply the court has also determined Defendants have established antitrust standing to assert the counterclaims. *See In re DDAVP Direct Purchaser Antitrust Litigation*, __ F.3d ___, 2009 WL 3320504, *7 (2d Cir. Oct. 16, 2009) (noting that an antitrust plaintiff must establish both Article III standing and antitrust standing). Here, Plaintiff's Second Affirmative Defense asserts Defendants lack standing. Reply ¶ 234. For example, Defendants do not allege they, or any of Plaintiff's subscribers or licensees, have suffered damages as a result of Plaintiff's ability to charge supra-competitive prices, in the form of subscription or license fees, a common form of antitrust injury caused by a monopolist in its relevant market, or that Plaintiff has charged such prices or fees. *Id.* (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). Nor, as noted, do Defendants allege they compete directly with Plaintiff. To date, Plaintiff has not moved to dismiss Defendants' antitrust counterclaims.

The court therefore turns to Plaintiff's contention that despite Defendants' expert's opinion that the financial documents served by Plaintiff are technically deficient, in the absence of any credible assertion that the alleged deficiencies were purposeful, an allegation not directly raised by Defendants at this time (Gormley Reply Declaration ¶ 20) (Plaintiff's documents "appear[ ] suspect") (underlining added), and that Plaintiff acknowledges the records are inaccurate, Plaintiff is under no obligation to supplement the financial records at issue by now providing documents that do not exist within Plaintiff's custody or control, Fed.R.Civ.P. 34(a), in order to rebut Defendants' accounting critique of Plaintiff's UDSMR's financial records.

Under Fed.R.Civ.P. 26(e)(2) a responding party is required to supplement its response to a document request "that the party learns was incomplete or inaccurate when made." Fed.R.Civ.P. 26(e)(2). Here, although Mr. Friedman has opined in detail that when measured against applicable standard accounting rules, numerous entries in Plaintiff's financial records pertaining to Plaintiff's revenues appear incomplete or inaccurate, Ms. Dann's affidavit explains that despite such appearances, a variety of considerations relevant to Plaintiff's business dictate how Plaintiff has accounted for its customer revenue as stated in the accounting records at issue. Ms. Dann's affidavit therefore provides no basis to find Plaintiff agrees with Mr. Friedman's opinion that the financial records provided to Defendants are in anyway inaccurate to an extent sufficient to support a finding that Plaintiff should be deemed to have acknowledged or has thereby 'learned' its responses require supplementation under Fed.R.Civ.P. 26(e). Defendants' reliance on *United States v. Rigas*, 490 F.3d 208 (2d Cir. 2007), Defendants' Reply Memorandum at 3, to support their contentions is misplaced. In

*Rigas*, the court stated, as relevant, that a defendant's lack of compliance with generally accepted accounting principles does not in itself establish the ultimate fact of fraud but the defendant's attempt at such compliance is relevant to the question of a defendant's good faith.  *Rigas*, 490 F.3d at 220 (citing *United States v. Simon*, 425 F.2d 796, 805-06 (2d Cir. 1969)).  Thus, even if, as here, Plaintiff is confronted with facially persuasive assertions of inaccurate accounting, its good faith refusal to acquiesce in such assertions, as explained in the Dann Affidavit, does not create an obligation to supplement its document production.

Moreover, a request for documents does not include the obligation to create information or documents which a party does not control or possess.  Fed.R.Civ.P. 34(a) (party required to produce documents in its "possession, custody or control.")  While a party seeking documents such as Defendants may have some basis to believe that records produced pursuant to Fed.R.Civ.P. 34(a) are inaccurate or incomplete, unless the responding party becomes aware the produced documents are subject to the requirement of Fed.R.Civ.P. 26(e)(1)(A) (duty to supplement where party "learns" produced documents are "incomplete or incorrect"), either based on new information or its own internal records, the "continuing burden" to supplement does not attach.  Advisory Committee Notes 1970 Amendment to Rule 26 (subdivision (e) - Supplementation of Responses).  Therefore, while Defendants may have reason to believe Plaintiff's document production at issue should be in a different form or provide answers to specific questions regarding how UDSMR accounts for its subscriber revenue, no evidence indicates Plaintiff concedes Defendants' technical accounting complaints are well-founded or is guilty of conscious avoidance of knowledge of such

10

errors, see *Metropolitan Opera Association, Inc. v. Local 100, Hotel Employees and Restaurant Employees International Union,* 2004 WL 1943099, *25 (S.D.N.Y. Aug. 27, 2004) (party may be sanctioned for "know-nothing, do-nothing, head-in-the sand behavior in any effort consciously to avoid knowledge of or responsibility for [its] discovery obligations."), and Defendants have not established that the documents were constructed or modified for the purpose of the instant litigation warranting sanctions including potential reconstruction or restatement of the disputed records. Indeed, Plaintiff specifically denies such misconduct. Dann Affidavit ¶ 2.

Accepting Defendants' accounting premises as applied to Plaintiff implies that Plaintiff should be required to restate the financial records at issue. In support, Defendants cite *Smith v. The Conway Organization*, 154 F.R.D. 73, 77 (S.D.N.Y. 1994) for the proposition that when informed of an error in its discovery responses, a party is required to amend its response to conform to the established facts. Defendants' Reply Memorandum at 4. In *Smith,* as a result of a discrepancy between the deposition testimony of defendant's former employee and an affidavit of plaintiff's attorney, and plaintiff's answer to defendant's interrogatory, plaintiff was directed to amend her answer to conform to the deposition testimony and affidavit which established the answer was incomplete. *Smith*, 154 F.R.D. at 77. Here, Plaintiff disputes any incompleteness in its financial records providing plausible reasons for its positions, as asserted in the Dann Affidavit, and, as such, *Smith* is inapposite. Thus, on this record, the court cannot impute knowledge to Plaintiff that the discrepancies asserted by Defendants are valid, thereby imposing the obligation to supplement as was the case in *Smith*. However, the court need not fully resolve this issue as Defendants have not

explicitly requested Plaintiff to create additional or amended documents at this time; rather, Defendants request specific particular documents, within Plaintiff's possession, custody or control, they believe should be produced to enable Defendants to determine Plaintiff's market share based on its subscribers' fees.  Should the accounting issues raised by Defendants remain unresolved following the completion of fact discovery, the question of Plaintiff's actual market share will remain a question of fact for trial, or summary judgment, as to which Defendants will carry the burden.

      Notwithstanding Ms. Dann's proffered rebuttal to Mr. Friedman's opinions regarding Plaintiff's accounting deficiencies, Defendants enumerate several categories of additional documents, specifically, for example, so-called general ledger journals, Defendants' motion at 1 ("all journal and ledger . . . memoranda and notes" for 2006-2008), which may, upon production, enable Defendants to resolve some of the questions raised by its expert pertaining to Plaintiff's accounting records Defendants claim are necessary to enable Defendants to establish Plaintiff's share of the relevant market, an essential element of Defendants' antitrust counterclaims.  Plaintiff concedes that at least the so-called "general ledger journal[s]" for the relevant fiscal years exist among its financial records.  Perlman Letter at 1.  Accordingly, although the court does not condone the delay in resolving this discovery issue, the court finds the Defendants' requests are relevant to an important element of their antitrust counterclaims and that Defendants have a substantial basis, Friedman Declaration; Friedman Reply Declaration, to request the additional information.  Therefore, except as to Defendants' request for an unredacted copy of the 11/4/200_ UDSMR customer list and Plaintiff's IRS Form 990 for Fiscal Year 2008, which the court finds have been produced, *supra* at

4, Plaintiff is required to respond to Defendants' additional document requests, to the extent the remainder of the documents delineated in Defendants' motion exist.

Following receipt and review of the requested additional financial records from Plaintiff, Defendants may, if necessary, request a further deposition of Mr. Schneider or a deposition of other designated UDSMR personnel, such as Ms. Dann, with sufficient knowledge of the alleged deletions and accounting discrepancies to further answer any remaining questions Defendants may reasonably have regarding the UDSMR's financial records at issue. In lieu of or in addition to such depositions, Defendants may also seek answers to any such accounting questions through interrogatories or requests to admit. Accordingly, Defendants' motion seeking additional depositions is GRANTED. Such additional discovery shall be concluded **within 90 days** of Defendants' receipt of Plaintiff's additional financial records as directed by the court. Any further motions to compel production or supplementation by Defendants shall be filed **not later than 10 days** following the completion of such additional fact discovery.

Based on its analysis of the principal discovery dispute raised by Defendants' motion, the court finds Defendants' request to amend the Amended Scheduling Order to be premature at this time, and Defendants' request is therefore DENIED without prejudice. Upon completion of this remaining phase of fact discovery, the parties shall propose jointly, or separately, in writing a Second Amended Scheduling Order for the court's consideration. As the court finds Plaintiff's refusal to supplement the documents at issue was predicated on an arguable basis in law and fact, in accordance with Fed.R.Civ.P. 37(a)(5)(A)(ii), Defendants' request for costs, including attorneys fees, is

also DENIED.[4]

Finally, the court finds Ms. Dann's affidavit primarily presents factual information regarding UDSMR's financial accounting practices relating to the produced records at issue; it offers no opinions subject to the requirements of Fed.R.Evid. § § 701-702.  See *M.O.C.H.A. Society, Inc. v. City of Buffalo*, 2008 WL 4412093, *2 (W.D.N.Y. Sep't. 23, 2008) ("percipient witness" testimony based on personal knowledge of method of creating civil service examination at issue, not a testifying expert for purposes of Fed.R.Civ.P. 26(a)(2)(A)) (citing Fed.R.Evid. 701, 702).  Defendants' request to strike the affidavit is therefore DENIED.

## CONCLUSION

Based on the foregoing, Defendants' motion is GRANTED in part, and DENIED in part.  Plaintiff shall provide the requested documents **within 30 days** of service of this Decision and Order.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated: November 19, 2009
          Buffalo, New York

---

[4] Plaintiff did not request costs.